IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| OCTIVIA BOOKER,<br><br>Plaintiff,<br><br>vs.<br><br>DISABILITY RESOURCE CENTER d/b/a ACCESSABILITY and JULIA MARTINELLI,<br><br>Defendants. | Civil Action No.:  2:23-cv-564-DCN-MGB<br><br><br>**COMPLAINT**<br>**(JURY TRIAL DEMANDED)** |

The Plaintiff above named, complaining of the acts of the above-named Defendants, states as follows:

PARTIES AND JURISDICTION

1. Plaintiff, Octivia Booker ("Plaintiff"), is a resident and citizen of the County of Charleston, State of South Carolina.

2. Upon information and belief, Defendant Disability Resource Center d/b/a AccessAbility ("AccessAbility") is a limited liability company incorporated in the state of South Carolina. Defendant does business and maintains an office and agents in the County of Charleston, State of South Carolina.

3. Upon information and belief, Julia Martinelli ("Martinelli") is a resident and citizen of the state of South Carolina.

4. This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. §1331, 42 U.S.C. §2000e ("Title VII") and 42 U.S.C. §1981.

5. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

6. Venue for all causes of action stated herein lies in the District of South Carolina, Charleston Division pursuant to 28 U.S.C. § 1391(b), in that the Plaintiff resides in the district, Defendant does business in the district, and a substantial part of the events giving rise to Plaintiff's claims occurred in the district.

7. Defendant is an employer with 15 or more employees and otherwise subject to Title VII.

8. Defendant is an employer subject to 42 U.S.C. 1981.

9. Plaintiff timely filed a complaint with the Equal Employment Opportunity Commission ("EEOC") and the South Carolina Human Affairs Commission ("SCHAC") alleging discrimination based upon sex, color, and race. Plaintiff's charge of discrimination also included an allegation of retaliation.

10. On or about January 23, 2023, Plaintiff received a right to sue notice from the EEOC regarding the complaint described above.

11. That Plaintiff timely filed the foregoing action within ninety (90) days of the date on which she received the notice of right to sue described above.

12. Plaintiff has exhausted all administrative remedies and conditions precedent, including timeliness, deferral and all other jurisdictional requirements necessary for the maintenance of this action.

13. Plaintiff is black American and female.

14. On or about January 18, 2022, Plaintiff was hired by Defendant as a job coach. In her role as job coach, Plaintiff's direct supervisor was Veneka Jasper, an African-American female ("Jasper").

15. Shortly after her hire, Plaintiff was promoted to a lead floor manager and Kurtis Whitehead, a Caucasian-American male (Whitehead") acted as her direct supervisor.

16. Both Jasper and Whitehead reported to Martinelli. At all times relevant, Martinelli was, and is employed by AccessAbility as its Director.

17. After Plaintiff began to work more closely with Whitehead, Plaintiff began receiving disciplinary actions from Whitehead for dress code violations. Each allegation of a dress code violation was inaccurate.

18. On or about February 7, 2022, during Black History Month, Whitehead issued a verbal warning to Plaintiff for wearing a shirt with the face of an African-American on it. Whitehead referred to Plaintiff's shirt as an "African Pride" shirt and told Plaintiff not to wear politically charged clothing to work.

19. Plaintiff objected to Whitehead's insinuation Plaintiff violated the dress code policy or that her shirt was inappropriate and complained that she was being targeted because of her race and gender.

20. Plaintiff further objected that her shirt was "politically charged" and she wore it to celebrate Black History Month. A month later, in March 2022, Plaintiff pointed out that Whitehead did not object to other employees wearing shirts supporting St. Patrick's Day. Specifically, Whitehead did not object to an employee wearing a shirt that read, "kiss me, I'm Irish."

21. Whitehead did not report Plaintiff's complaint of being targeted to anyone.

22. On or about February 10, 2022, in retaliation for Plaintiff making a complaint of discrimination, Whitehead issued another verbal disciplinary action to Plaintiff, claiming Plaintiff was out of compliance with the dress code policy. Whitehead accused Plaintiff of wearing an inappropriate shirt with her slacks. Plaintiff again objected to Whitehead's assessment of Plaintiff's dress and conveyed she was being targeted because of her skin color and sex.

23.     On the same day Whitehead issued a verbal warning to Plaintiff regarding the shirt Plaintiff was wearing on February 10, 2022, Plaintiff approached her previous supervisor, Jasper, and inquired if her clothing was unprofessional.  Jasper informed Plaintiff there was nothing wrong with her clothing.  Plaintiff then informed Jasper of Whitehead's comments and complained to Jasper that she felt Whitehead was targeting her because of her race and sex.

24.     Neither Whitehead nor Jasper reported Plaintiff's complaint or took any steps to investigate the matter.  Instead, on or about February 11, 2022, Whitehead met with Plaintiff and informed her that her complaints of discrimination were "moot."

25.     In or about February, 2022, another co-worker, Karen Turner ("Turner") began repeatedly using the word "nigger" to refer to African-Americans.

26.     Plaintiff and other employees of AccessAbility were present when Turner used the word "nigger" to refer to African-Americans.  Each of the individuals who heard Turner's comments were Caucasian-Americans except for Plaintiff and another co-worker, LaShonda McDowell ("McDowell").

27.     Immediately after hearing Turner use the word "nigger," when referring to African-Americans, both Plaintiff and McDowell objected to Turner's continued use of the word.

28.     Turner refused to stop saying "nigger" and continued to do so in spite of Plaintiff's request for Turner to stop.

29.     Subsequent to the incident with Turner described above, Plaintiff and McDowell decided to report the incident to Martinelli.  Both Plaintiff and McDowell agreed to report the incident in person.

30.     When Martinelli was available receive the report of Turner's comments, Plaintiff was unavailable, but directed McDowell to make the complaint on behalf of Plaintiff as well.

31. In or about February 2022, McDowell informed Martinelli she would like to report Turner's use of the word "nigger" on behalf of herself and Plaintiff. McDowell informed Martinelli she should speak with Plaintiff about the incident as a co-reporter of the incident.

32. After receiving Plaintiff's complaint of Turner's behavior, Martinelli, dismissed Plaintiff's complaint and took the position that Plaintiff and McDowell should not be offended because Turner was not referring to either of them when she used the term "nigger."

33. In or about April 7, 2022, Whitehead and Martinelli retaliated against Plaintiff by removing the door and window from her workspace.

34. Whitehead informed Plaintiff the purpose of removing the doors and windows was to "help with the circulation of air" or words of similar effect related to ventilation.

35. The reason Whitehead gave Plaintiff for the removal of the doors and windows (to "help with the circulation of air") was false.

36. The true reason the removal of the doors and windows of Plaintiff's workspace was because Whitehead and Martinelli wanted to punish Plaintiff for making reports of discrimination, retaliation and hostile work environment.

37. The true reason the removal of the doors and windows of Plaintiff's workspace was because Whitehead and Martinelli wanted to discourage Plaintiff from engaging in protected activity such as discussing and reporting acts of discrimination, retaliation and hostile work environment.

38. On or about April 12, 2022, Plaintiff attended a diversity and inclusion training required by AccessAbility. During the training, the American Civil Rights era was discussed and Civil Rights era photographs of African-Americans being accosted at lunch counters by Caucasian-Americans were displayed.

39. During the April 12, 2022, training at or near the time the photographs were being displayed, Martinelli referenced the photographs and commented that African-Americans "today" should have a "thick skin" and tolerate abusive treatment like those "back then."

40. Martinelli directed this comment toward Plaintiff as a reply to Plaintiff's previous complaints of discrimination and in order to dissuade Plaintiff and others from making complaints about discrimination. Plaintiff objected to Martinelli's comment and informed Martinelli that racial abuse should not be tolerated.

41. Martinelli began to spread false and defamatory rumors about Plaintiff and conveyed to third parties that Plaintiff was unfit to work in the social services industry and that Plaintiff was "a trouble maker," "a problem," "angry," "hostile," "a bad employee," "not a team player," "not fit for her position," or similar false statements about Plaintiff.

42. Subsequent to Plaintiff's complaints of discrimination, Defendants continued their campaign of retaliatory conduct by creating a hostile work environment as described above.

43. In furtherance of the hostile environment and in retaliation for making complaints of discrimination, Defendants crafted false disciplinary reports claiming Plaintiff was regularly late for work. Specifically, Plaintiff was presented with a single disciplinary action that falsely claimed she was late for work on April 12, April 13, and April 21, 2022.

44. Plaintiff was not late on the dates refenced in the single disciplinary action and complained that she was, again, being unfairly and inappropriately targeted.

45. On or about June 15, 2022, Defendants further retaliated against Plaintiff by reducing her working hours.

46. On or about June 16, 2022, Martinelli abruptly terminated Plaintiff's employment.

47.     Subsequent to Plaintiff's termination, Martinelli began to make false and defamatory statements about Plaintiff to third parties.

48.     Specifically, Martinelli made false statements about Plaintiff that harmed her business or profession as a social services worker.  Martinelli conveyed to third parties that Plaintiff was unfit to work in the social services industry and that Plaintiff was "a trouble maker," "a problem," "angry," "hostile," "a bad employee," "not a team player," "not fit for her position," or similar false statements about Plaintiff.

49.     Subsequent to making thee false and defamatory statements about Plaintiff, Martinelli conspired with one or more persons to ensure Plaintiff would not be able to work in the Charleston area.

50.     Martinelli made these false statements to third parties.

51.     As a result of Martinelli's actions Plaintiff was not selected for at least two positions she applied.

FOR A FIRST CAUSE OF ACTION:
VIOLATION OF TITLE VII
DISCRIMINATION BASED ON RACE/COLOR

52.     Plaintiff hereby realleges each and every allegation contained in the Paragraphs above as fully as if set forth herein verbatim.

53.     Plaintiff, as black American, is a member of a protected class under Title VII.

54.     Throughout her employment with AccessAbility, Plaintiff was performing her job satisfactorily.

55.     Plaintiff was subjected to adverse employment actions by her employer and agents of her employer including, but not limited to, bullying, intimidation, decreased working hours, receiving unwarranted disciplinary actions, and being terminated from her employment with AccessAbility.

56.     Plaintiff's treatment was different from similarly situated employees outside her protected class. By way of example, Plaintiff was disciplined for violating AccessAbility's dress code policy for when other Caucasian-American employees were not.

57.     There is additional evidence that gives rise to an inference of unlawful race-based discrimination to include, but not limited to Plaintiff's supervisors making comments that she, as a black American, was overly vocal, and argumentative, should have a "thin skin" and tolerate being assaulted, and told not to be offended when coworkers use the word "nigger" when referring to black Americans.

58.     AccessAbility's behavior humiliated Plaintiff, unreasonably interfered with her work performance, affected the terms, conditions, and privileges of her employment and otherwise caused Plaintiff severe psychological and physical harm.

59.     That as a result of the above, Plaintiff has suffered damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, and has suffered severe psychological harm, emotional distress, anxiety, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and further seeks attorney's fees and costs and prejudgment interest.

60.     That the AccessAbility's actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously and with utter disregard for the federally protected rights of the Plaintiff and, therefore, Plaintiff is entitled to recover punitive damages from the Defendants.

## FOR A SECOND CAUSE OF ACTION:
## VIOLATION OF TITLE VII
## SEX DISCRIMINATION

61. Plaintiff hereby realleges each and every allegation contained in the Paragraphs above as fully as if set forth herein verbatim.

62. Plaintiff, as a female, is a member of a protected class under Title VII.

63. Throughout her employment with AccessAbility, Plaintiff was performing her job satisfactorily and met her employer's expectations.

64. Plaintiff was subjected to adverse employment actions by her employer and agents of her employer including, but not limited to, bullying, intimidation, decreased working hours, receiving unwarranted disciplinary actions, and being terminated from her employment with AccessAbility.

65. Plaintiff's treatment was different from similarly situated employees outside her protected class. By way of example, Plaintiff was disciplined for violating AccessAbility's dress code policy when other male employees were not.

66. AccessAbility's behavior humiliated Plaintiff, unreasonably interfered with her work performance, affected the terms, conditions, and privileges of her employment and otherwise caused Plaintiff severe psychological and physical harm.

67. That as a result of the above, Plaintiff has suffered damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, and has suffered severe psychological harm, emotional distress, anxiety, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and further seeks attorney's fees and costs and prejudgment interest.

68. That the AccessAbility's actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously and with utter disregard for the federally protected rights of the Plaintiff and, therefore, Plaintiff is entitled to recover punitive damages from AccessAbility.

FOR A THIRD CAUSE OF ACTION
VIOLATION OF TITLE VII
RETALIATION

69. Plaintiff hereby realleges each and every allegation contained in the Paragraphs above as fully as if set forth herein verbatim.

70. That as alleged above, Plaintiff complained to AccessAbility on several occasions that she was being discriminated against based on her sex, color, and race.

71. That Plaintiff's complaints were made in good faith, and constitute protected activity under Title VII.

72. AccessAbility's actions as alleged above were in retaliation for Plaintiff engaging in protected activity and created a work environment that a reasonable person would find to be harassing, hostile, and abusive.

73. Plaintiff, on numerous occasions, complained to Defendants about the above-described sex and race discrimination and hostile work environment.

74. Despite being notified of the above-mentioned conduct, Defendants failed to take prompt and effective remedial action to end the illegal conduct and Defendants continued to subject Plaintiff to discrimination and retaliation in violation of Title VII.

75. Subsequent to and in retaliation for Plaintiff making complaints, Defendants created and allowed the work environment to be so hostile that no person could have withstood such treatment.

76. That as a result of the above, Plaintiff has suffered damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, and has suffered

severe psychological harm, emotional distress, anxiety, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and further seeks attorney's fees and costs and prejudgment interest.

77. AccessAbility's actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously and with utter disregard for the federally protected rights of the Plaintiff, and therefore Plaintiff is entitled to recover punitive damages from AccessAbility.

FOR A FOURTH CAUSE OF ACTION:
VIOLATION OF TITLE VII
HOSTILE WORK ENVIRONMENT

78. Plaintiff hereby realleges each and every allegation contained in the Paragraphs above as fully as if set forth herein verbatim.

79. During Plaintiff's employment, she was subjected to an unwelcome and hostile environment created by Defendant and its agents.

80. The hostile environment Plaintiff was subjected to was based on her sex and race.

81. Plaintiff was subject to additional harassment because Plaintiff made complaints about discrimination and retaliation.

82. AccessAbility's behavior humiliated Plaintiff, unreasonably interfered with her work performance, affected the terms, conditions, and privileges of her employment and otherwise caused Plaintiff severe psychological and physical harm.

83. The hostile environment was sufficiently severe and pervasive to alter the conditions of her employment. Specifically, AccessAbility knew about, created, cultivated, and allowed the work environment to be so hostile Plaintiff was forced to take a leave of absence from work.

84. That as a result of the above, Plaintiff has suffered damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, and has suffered severe psychological harm, emotional distress, anxiety, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and further seeks attorney's fees and costs and prejudgment interest.

85. AccessAbility's actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously and with utter disregard for the federally protected rights of Plaintiff and, therefore, Plaintiff is entitled to recover punitive damages from Defendants.

FOR A FIFTH CAUSE OF ACTION:
VIOLATION OF 42 U.S.C. 1981
RACE DISCRIMINATION

86. Plaintiff hereby realleges each and every allegation contained in the Paragraphs above as fully as if set forth herein verbatim.

87. Plaintiff is a black American.

88. Throughout her employment with AccessAbility, Plaintiff was performing her job satisfactorily.

89. Plaintiff was subjected to adverse employment actions by her employer, agents of her employer, and Martinelli including, but not limited to, bullying, intimidation, decreased working hours, receiving unwarranted disciplinary actions, and being terminated from her employment with AccessAbility.

90. Plaintiff's treatment was differently from similarly situated employees outside her protected class. By way of example, Plaintiff was disciplined for violating AccessAbility's dress code policy when other Caucasian-American employees were not.

91. There is additional evidence that gives rise to an inference of unlawful race-based discrimination to include, but not limited to Plaintiff's supervisors making comments that she, as a black American, was overly vocal, and argumentative, should have a "thin skin" and tolerate being assaulted, and told not to be offended when coworkers use the word "nigger" when referring to black Americans.

92. Defendants' behavior humiliated Plaintiff, unreasonably interfered with her work performance, affected the terms, conditions, and privileges of her employment and otherwise caused Plaintiff severe psychological and physical harm.

93. Defendants' actions as alleged above created a work environment that a reasonable person would find to be harassing, hostile, and abusive.

94. Plaintiff, on numerous occasions, complained to Defendants about the above-described race discrimination and hostile work environment and Defendants were on notice that it was occurring.

95. Despite being notified of the above-mentioned conduct, Defendants failed to take prompt and effective remedial action to end the illegal conduct and Defendants continued to subject Plaintiff to race discrimination in violation of 42 U.S.C. 1981.

96. That as a result of the above, Plaintiff has suffered damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, and has suffered severe psychological harm, emotional distress, anxiety, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and further seeks attorney's fees and costs and prejudgment interest.

97. That the Defendants' actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously and with utter disregard for the federally protected rights of the Plaintiff and, therefore, Plaintiff is entitled to recover punitive damages from Defendants.

98. But for Plaintiff's race, Defendants would have properly investigated Plaintiff's complaints and would not have allowed the hostile environment to continue in the office.

99. But for Plaintiff's race, Defendants would not have discriminated against Plaintiff.

100. But for Plaintiff's race, Defendants would not have terminated Plaintiff's employment.

101. Defendants terminated Plaintiff's employment because she made complaints about race discrimination.

102. Plaintiff was discriminated against in violation of 42 U.S.C. 1981.

103. As a result of Defendants' actions, Plaintiff has suffered damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, and has suffered severe psychological harm, emotional distress, anxiety, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and further seeks attorney's fees and costs and prejudgment interest.

104. Defendants' actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously and with utter disregard for the federally protected rights of Plaintiff and she is entitled to recover punitive damages from Defendants.

FOR A SIXTH CAUSE OF ACTION:
VIOLATION OF 42 U.S.C. 1981
RETALIATION

105. Plaintiff hereby realleges each and every allegation contained in the Paragraphs above as fully as if set forth herein verbatim.

106.   That as alleged above, Plaintiff complained to Defendants on several occasions that she was being harassed and discriminated against because of her race.

107.   That Plaintiff's complaints were made in good faith, and constitute protected activity under 42 U.S.C. 1981.

108.   Subsequent to and in retaliation for Plaintiff making complaints, Defendants created and allowed the work environment to be so hostile Plaintiff was forced to take a leave of absence.

109.   In retaliation for Plaintiff making complaints, Defendants disciplined Plaintiff and altered her workspace by removing the doors and windows.

110.   In retaliation for Plaintiff making complaints, Defendants terminated Plaintiff's employment.

111.   That as a result of the above, Plaintiff has suffered damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, and has suffered severe psychological harm, emotional distress, anxiety, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and further seeks attorney's fees and costs and prejudgment interest.

112.   Defendants' actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously and with utter disregard for the federally protected rights of the Plaintiff, and therefore Plaintiff is entitled to recover punitive damages from Defendants.

FOR A SEVENTH CAUSE OF ACTION:
VIOLATION OF 42 U.S.C. 1981
HOSTILE WORK ENVIRONMENT

113.   Plaintiff hereby realleges each and every allegation contained in the Paragraphs above as fully as if set forth herein verbatim.

114. During Plaintiff's employment, she was subjected to an unwelcome and hostile environment created by Martinelli, Defendants, and its agents.

115. Defendants' conduct as described above was unwelcome.

116. The hostile environment Plaintiff was subjected to was due to her race.

117. Plaintiff was subject to additional harassment because Plaintiff made complaints about discrimination and retaliation.

118. Defendants' actions as alleged above created a work environment that a reasonable person would find to be harassing, hostile, and abusive.

119. Plaintiff, on numerous occasions, complained to Defendants about the above-described race-based discrimination and hostile work environment and Defendants were on notice that it was occurring.

120. Despite being notified of the above-mentioned conduct, Defendants failed to take prompt and effective remedial action to end the illegal conduct and Defendants continued to subject Plaintiff to race-based discrimination in violation of 42 U.S.C. 1981.

121. Defendants' behavior humiliated Plaintiff, unreasonably interfered with her work performance, affected the terms, conditions, and privileges of her employment and otherwise caused Plaintiff severe psychological and physical harm.

122. The hostile environment was sufficiently severe and pervasive to alter the conditions of her employment. Specifically, Defendants knew about, created, cultivated, and allowed the work environment to be hostile.

123. That as a result of the above, Plaintiff has suffered damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, and has suffered severe psychological harm, emotional distress, anxiety, pain and suffering, inconvenience, mental

anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and further seeks attorney's fees and costs and prejudgment interest.

124. Defendants' actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously and with utter disregard for the federally protected rights of Plaintiff and, therefore, Plaintiff is entitled to recover punitive damages from Defendants.

FOR AN EIGHTH CAUSE OF ACTION
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

125. Plaintiff hereby realleges each and every allegation contained in the Paragraphs above as fully as if set forth herein verbatim.

126. Defendants intentionally and recklessly inflicted severe emotional distress, or was certain, or substantially certain, that such distress would result from her conduct.

127. The conduct of Defendants was so extreme and outrageous that is exceeded all possible bounds of decency, was atrocious, and is utterly intolerable in a civilized community.

128. Defendants' conduct caused Plaintiff to suffer extreme and severe emotional distress such that no reasonable person could be expected to endure it.

129. By way of example and in addition to the acts mentioned above, Defendants removed the doors and windows from Plaintiff's workspace in order to embarrass Plaintiff.

130. As a direct and proximate result of the actions of Defendants, Plaintiff sustained damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, and has suffered severe psychological harm, emotional distress, anxiety, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and further seeks attorney's fees and costs and prejudgment interest.

## FOR A NINTH CAUSE OF ACTION
## DEFAMATION

131. Plaintiff hereby realleges each and every allegation contained in the Paragraphs above as fully as if set forth herein verbatim.

132. Martinelli, in her individual capacity and as an agent of AccessAbility, through words and actions, made false and defamatory statements to third parties about Plaintiff.

133. The statements and actions of Martinelli directly and indirectly implied Plaintiff was unfit for her business or profession. Specifically, Martinelli implied or used words to the effect that Plaintiff was unfit to work in the social services industry and that Plaintiff was "a trouble maker," "a problem," "angry," "volatile," "unstable," "a bad employee," "not a team player," and "not fit for her position," among other false statements.

134. The malicious statements and insinuations made by Martinelli are defamatory *per se.*

135. The malicious statements and insinuations made by Martinelli are defamatory *per quod.*

136. As a result of Defendants' actions, Plaintiff has suffered damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, and has suffered severe psychological harm, emotional distress, anxiety, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and further seeks punitive damages, attorney's fees and costs and prejudgment interest.

WHEREFORE, Plaintiff requests a jury trial on all causes of action and prays for the following relief against Defendants: for such amount of actual and special damages as the trier of fact may find, (including lost back and future wages, income and benefits, expenses associated with finding other work, severe psychological harm, emotional distress, anxiety, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation,

loss to professional standing, character and reputation, and physical and personal injuries), punitive damages, the cost and disbursements of this action, including reasonable attorneys' fees, prejudgment interest and for such other and further relief as the court deems just and proper.

                RESPECTFULLY SUBMITTED,

                GAFFNEYLEWIS LLC

                s/*Emmanuel J. Ferguson, Sr.*
                Emmanuel J. Ferguson, Sr.
                Federal Bar #11941
                3700 Forest Drive, Suite 400
                Columbia, South Carolina 29204
                (803) 875-1925  telephone
                (803) 790-8841  facsimile
                eferguson@gaffneylewis.com

                *Attorney for Plaintiff*

February 9, 2023

Columbia, South Carolina